**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**ASHLAND**

**CIVIL ACTION NO. 06-23-DLB**

**H&R BLOCK TAX SERVICES, INC.,**                                    **PLAINTIFF,**


**VS.**                            **MEMORANDUM OPINION AND ORDER**


**LETHA NELL SHEETS**
**JENNIFER M. SHEETS**
**SHEETS BOOKKEEPING, INC.,**                                  **DEFENDANTS.**

                        **\*\*\*   \*\*\*   \*\*\*   \*\*\***

## I.    INTRODUCTION

This matter is before the Court on Plaintiff's Motion for a Preliminary Injunction [Docket No. 2]. Plaintiff claims Defendant Letha Nell Sheets violated obligations she assumed under a franchise agreement with the Plaintiff. Particularly, Plaintiff alleges Defendant Letha Nell Sheets violated the covenants of non-competition, non-disclosure, and non-solicitation. Plaintiff also claims that Defendant Jennifer Sheets tortiously interfered with its rights under the franchise agreement between Plaintiff and Letha Sheets. Additionally, Plaintiff claims Defendants Jennifer Sheets and Sheets Bookkeeping, Inc. ("SBI") are successors to Letha Sheets and are therefore bound by the franchise agreement as well. Plaintiff alleges that Defendants' operation of the tax preparation portion of their business is in violation of the franchise agreement to the continuing detriment of H&R Block's new franchisee in the area.

1

Plaintiff requests that the Court enjoin Defendants' continued violations of the franchise agreement. Specifically Plaintiffs seek a preliminary injunction pending the outcome of this litigation that orders Defendants to cease competing with Plaintiff within a 45 mile radius of West Liberty, Kentucky; soliciting by mail, phone, or in person, any person for whom Letha Sheets prepared a tax return or performed related services as a Block franchisee; divulging or using for the benefit of any person or entity other than Block, any confidential or customer information obtained as a result of the former Block franchise. Plaintiff also asks that the Court order Defendants to immediately deliver any customer information, tax returns, materials, data, and other property of Block.

The Court heard testimony during an evidentiary hearing held on February 24, 2006. Each side has filed its proposed findings of fact and conclusions of law [Docket Nos. 19-20, 22]. Additionally, Plaintiff filed a pre-hearing brief [Docket No. 23] to which Defendants filed a response [Docket No. 24]. Plaintiff's motion is now ripe for adjudication.

As there exists complete diversity of citizenship, and as the Court, based upon the representations of the Plaintiff during a prior telephone conference, is satisfied at this point that the amount in controversy exceeds $75,000, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.[1] Based upon the evidence presented at the hearing and evidence filed in the record, the Court enters the following findings of fact, which findings outline the background of the dispute and are relevant to adjudicating the preliminary injunction request. These findings are numbered for ease of reference in subsequent

---

[1]Defendants have filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction wherein they challenge the amount in controversy [Docket No. 17]. Plaintiff's response time has not yet run. The Court will adjudicate Defendants' motion via separate order.

sections of this Opinion and Order.

## II.   FACTUAL FINDINGS

1. Plaintiff is a Missouri Corporation with its principal place of business at 4400 Main Street, Kansas City, Missouri, 64111. H&R Block and its affiliates maintain franchises and company-owned offices throughout the United States, including the State of Kentucky.

2. Defendants Letha Sheets and Jennifer M. Sheets are citizens of the State of Kentucky.

3. Defendant Sheets Bookkeeping, Inc. ("SBI") is a Kentucky S-Corporation, incorporated in 1994, with its principal place of business located at 212 Riverside Drive, West Liberty Kentucky.

4. Upon its incorporation in 1994 and through and until December 2005, SBI had two shareholders, Letha Nell Sheets and Jennifer M. Sheets. Although Letha Sheets purportedly retired on December 31, 2005, according to the Kentucky Secretary of State's webpage, she was listed as secretary and vice president for SBI as recently as February 7, 2006.[2]

5. Letha Nell Sheets is no longer a shareholder of SBI, and Jennifer M. Sheets is now the sole shareholder and officer.

6. Defendant Letha Nell Sheets and Defendant Jennifer M. Sheets also own another corporation, Business Accounting Service, Inc. ("BASI"), incorporated in 1991. BASI was the corporate entity formed to facilitate management of the H&R Block Franchise owned by Letha Nell Sheets.

_____

[2] The Court surmises that this change occurred after the filing of this lawsuit. The Secretary of State's webpage lists an annual report being filed by SBI on February 22, 2006.

7. Plaintiff H&R Block is in the highly competitive business of providing tax preparation and related services to companies and individuals throughout the United States.

8. H&R Block grants franchises for the operation of businesses that perform tax preparation and related services. H&R Block and its affiliates have granted franchises throughout the United States, including the State of Kentucky.

9. On or about December 18, 1990, H&R Block Eastern Tax Services , Inc. and Letha Sheets entered into a franchise agreement under which Letha Sheets agreed, *inter alia,* to operate an income tax return preparation service as an H&R Block franchise in West Liberty, Kentucky at 212 Riverside Drive and agreed to other rights and obligations provided under the contract.

10. On or about December 31, 2004, H&R Block Eastern Tax Services, Inc. transferred its rights and obligations under the West Liberty Franchise Agreement to Plaintiff H&R Block.

11. In paragraph 12 of the Franchise Agreement, Letha Nell Sheets agreed to covenants of non-competition, non-solicitation, and non-disclosure.

12. In paragraph 12(a)(ii), Letha Sheets agreed not to solicit customers of H&R Block as follows:

> for a period of one year after the termination of this Agreement or the Transfer or other disposition of this franchise, she will not directly or indirectly, whether as an owner, stockholder, partner, officer, director or employee, solicit by mail, phone or in person, or divert from Block or Block franchisees any person for whom Franchisee prepared a tax return or performed Related Services or Additional Services at any time during the term of this Agreement for the purpose of rendering of services in connection with the preparation of tax returns or performance of Related Services or Additional Services . . . .

13. In paragraph 12(a)(iii), Letha Sheets agreed not to compete as follows:

> for a period of one year after the termination of this Agreement or the transfer or other disposition of this franchise, she will not compete directly or indirectly, whether as an owner, stockholder, partner, officer, director or employee, with Block or Block franchisees in the business of preparing tax returns or performing Related Services or Additional Services in or within 45 miles of the Franchise Territory.

14. In paragraph 12(b), Letha Sheets agreed to a non-disclosure covenant in which she agreed she:

> will never (i) divulge to or use for the benefit of any person, association or corporation outside of the H&R Block organization, any information or knowledge concerning customers, the methods, promotion, advertising or any other systems or methods of operation of Block's business or that of Block's franchisees which Franchisee may have acquired by virtue of her operations under this Agreement . . . or (iii) do any deliberate act prejudicial or injurious to the goodwill or name of Block. Information furnished to employees shall be reasonably limited to that which directly relates to such employee's duties and assists in the proper performance of such duties.

15. Letha Sheets further agreed that H&R Block would be entitled to injunctive relief in the event she breached the provisions of paragraphs 12(a) and 12(b), as follows:

> Franchisee further acknowledges that the qualifications for a franchise by Block are special, unique and extraordinary, and that this Agreement would not be entered into by Block except upon condition that the provisions of this paragraph 12 be included herein and that, as such, they be enforceable, in the event of a breach by Franchisee, by injunctive relief. Franchisee disclaims any defense to the enforcement of the provisions of this paragraph 12 founded on any claim by Franchisee against Block.

16. During the course and scope of her franchise relationship with H&R Block, Letha Sheets was entrusted with confidential information and trade secrets of H&R Block with independent value to H&R Block and not generally known or ascertainable by H&R Block's competitors.  The confidential and trade secret information that Letha Sheets obtained

5

about H&R Block's business and methods of operating is critical to H&R Block maintaining its competitive position in the Kentucky area and in other areas.

17. The confidential information H&R Block provided to Letha Sheets included, but was not limited to customer lists, pricing strategies, sales and competitive strategies, marketing strategies, performance statistics, growth strategies, employee compensation plans and quality assurance strategies, and other confidential information.

18. In paragraph 25 of the Franchise Agreement, H&R Block and Letha Sheets agreed that the Franchise Agreement "shall be subject to and construed by the laws of the State of Missouri...."

19. Paragraph 27 of the Agreement states that it is binding upon the parties and, among others, their "successors."

20. By letter dated August 9, 2005, Letha Sheets gave notice to H&R Block of her intent not to renew the Franchise Agreement and that said agreement would expire on December 18, 2005. By letter dated August 18, 2005, H&R Block acknowledged the expiration of the Franchise Agreement on December 18, 2005. On December 19, 2005, H&R Block entered into a new Franchise Agreement with Georgina Stamper to re-franchise the West Liberty, Kentucky location.

21. Before Letha Sheets' H&R Block Franchise Agreement had expired, Jennifer Sheets incorporated a business named "Sheets Bookkeeping, Inc." ("SBI"). SBI is a Kentucky S-corporation and is a successor to Letha Sheets. Jennifer Sheets is the President and Treasurer of SBI. Until very recently, Letha Sheets was SBI's Vice President and Secretary.

6

22. Letha Sheets' Block franchise was located at 212 Riverside Drive, West Liberty, Kentucky. 212 Riverside Drive is part of a building that also contains 210 and 214 Riverside Drive. The building is owned by Jennifer Sheets and Earl Sheets.

23. 214 Riverside Drive is vacant. The only entrance to the building is through the door labeled 212 Riverside Drive. The door to 210 Riverside Drive is locked and has no handle on the outside of the door. There is no access to 210 Riverside Drive from the outside except through 212 Riverside Drive.

24. Paragraph 14 imposed the following obligations on Letha Sheets in the event of termination:

> If this Agreement is terminated ... all rights of Franchisee shall terminate ... Without limiting the generality of the foregoing, upon any termination of this Agreement all amounts payable to Block or any of Block's subsidiaries or affiliates shall immediately become due and payable and Franchisee shall immediately return to Block all supplies and other items provided under paragraph 7, copies of all customer tax returns and all materials, data and property of Block, including all computer software provided under paragraph 8, all sets and copies of the Manual and all books, records, customer lists, customer names, forms, files and computer storage materials including such information and other relevant data.... If Franchisee owns the real property then used in connection with Franchisee's tax return preparation or Additional Services operations, for a period of one year after termination of this Agreement, Franchisee shall not lease such premises to any person (other than Block or a transferee approved by Block pursuant to paragraph 16) for the purpose of conducting a tax return preparation business or business engaged in performing Additional Services. Block shall have the sole right and privilege to use any information appearing on file copies of customer tax returns in connection with the preparation of subsequent years' tax returns for such customers.... Franchisee will also upon any such termination, refrain from holding Franchisee out to the public in any way as affiliated or connected with Block, and thereafter distinguish Franchisee's business, if any, so clearly from that of Block as to avoid all possibility of any confusion by the public.

25. Letha Sheets was also required under the franchise agreement to obtain non-compete agreements (known as Tax-Pro agreements)from all employees of the franchise. From 1993 forward, Letha Sheets made a practice of asking the employees for the agreements but leaving the decision whether to execute it up to the employees themselves

26. Jennifer Sheets knew of the requirement for the employee non-compete agreements but did not sign one after 1993. She refused to sign when asked by Letha Sheets because she "saw no purpose in it."

27. Paragraph 22 of the Franchise Agreement provides for non-waiver of breach as follows:

> The failure of either party hereto to enforce at any time or for any period of time any one or more of the terms or conditions of this Agreement shall not be deemed a waiver of such terms or conditions or of either party's rights thereafter to enforce each and every term and condition of this Agreement.

28. Upon termination of the franchise, Letha Sheets retained possession of hard copy customer files, as well as customer lists, customer names, and tax returns. Although Letha Sheets submitted electronic customer records to Block, those were incomplete records.

29. Letha Sheets had no knowledge of the contents of the electronic records turned over to Block as she is computer illiterate. The electronic records were maintained by Jennifer Sheets.

30. Immediately after the Franchise Agreement expired, SBI began operating a tax preparation service from the very same location as Letha Sheets' former H&R Block location in West Liberty, Kentucky. Although SBI had prepared tax returns before the

8

expiration of the Block franchise, it was a negligible amount. Defendant SBI stipulates that it prepared approximately 16 business returns in 2005.

31. On January 6, 2006, Jennifer Sheets and SBI sent a letter to "our clients" advising them that Sheets/SBI were continuing to offer the same tax preparation services they had offered as H&R Block, that they had all of the clients' personal information, that they had the same tax preparers as before, and that they were available to perform tax preparation services for those H&R Block clients.

32. The January 6, 2006 letter also stated:

> Although we are no longer affiliated with H&R Block, it is our intention to continue to prepare tax returns and to offer bookkeeping services as in the past. Please rest assured that it is our intention to continue to provide the prompt, accurate, and friendly services you have come to expect.

33. This letter was part of a mass mailing directed at nearly one thousand clients who had received tax preparation services from Letha Sheets' former Block franchise in 2005. During the hearing, Jennifer Sheets testified she sent the letter as a reaction to something that had already occurred. She explained that it was in response to some print or media advertising conducted by the new West Liberty Block franchisee.

34. This letter was received by the current secretary for the new Block franchisee, Brandy Burkett. Ms. Burkett had her tax return prepared by Letha Sheets' Block franchise in 2005.

35. The letters were prepared on site at Sheets Bookkeeping, using address labels generated in April 2005 by Jennifer Sheets after the close of the tax season. The names and addresses for these labels came from Block's confidential client files.

36. Jennifer Sheets/SBI employs Bertha Keeton, Carolyn Barker, Kim Stone and Totsy Evans, in addition to Jennifer Sheets.  All of these persons were employed by Letha Sheets' H&R Block franchise in West Liberty, KY before December 18, 2005.

37. Letha Sheets, as an H&R Block franchisee, was in possession of confidential information, including proprietary computer software, client files, Block marketing materials and other documents. Jennifer Sheets also had access to these materials.

38. Upon termination of her Block franchise, Letha Sheets retained possession of all hard copies of Block client files. According to Letha Sheets, she retained those copies to comply with IRS regulations. Those files were placed in an unlocked file cabinet kept on SBI premises.

39. SBI operates in the same building, using the same office furniture, computers, telephones, and employees as the former Block franchise.

40. The 2004-2005 Yellow Pages entry for H&R Block in West Liberty, Kentucky, listed two phone numbers, only one of which was turned over to Block upon termination of the franchise. The other phone number is currently being used by SBI.

41. SBI and Jennifer Sheets, individually and jointly, have prepared, are preparing and/or will continue to prepare tax returns for H&R Block customers for whom Jennifer and Letha Sheets prepared returns while operating the H&R Block franchise, within one year of the termination of the Franchise Agreement.

42. In January, 2006, SBI and Jennifer Sheets ran an advertisement in the Jackson, Kentucky,  Times that lists the location, telephone numbers, and office hours, and contains the following language:

"YES! We Are Preparing Tax Returns!... Providing Services Since 1962...Audit Assistance... Office Error- we pay interest and penalty... Same location... Same tax preparers... Instant Refund Anticipation Loan(if qualify leave with a check)... Refund Anticipation Loan offered by HSBC (household bank)... In office check pickup... Don't Be Confused by Telephone Calls and Letters... Jennifer M. Sheets, EA"

43. H&R Block's new franchisee in West Liberty, Kentucky, Georgina Stamper, has suffered significant injury as a result of defendants' conduct.  Specifically, Stamper's tax preparation business is off by more than 65% from what Letha Sheets' H&R Block franchisee reported in 2005.   According to Stamper, Block relies heavily on repeat customers. Stamper estimated approximately 65% - 72% of its customers have their taxes prepared by Block in subsequent years.

44. H&R Block's most valuable asset is its clients, which includes goodwill and client trust. Loss of client trust or loss of clients to a competitor equates amounts to a loss or transfer of assets.

45. It is economically possible for Sheets Bookkeeping to exist and operate without providing tax return services or other related services that had been performed by the former Block franchise until January 2006. Jennifer Sheets stated that in 2005, Sheets Bookkeeping could have existed independently and without the H&R Block Franchise. Jennifer Sheets also testified that her primary source of revenue comes from the bookkeeping services provided by SBI, rather than its tax preparation services.

11

### III.    ANALYSIS

When presented with a motion for preliminary injunction, the district court should consider four factors: (1) whether the moving party has a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable injury without the injunction; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the issuance of the injunction would serve the public interest. *Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club,* 325 F.3d 712, 717 (6th Cir. 2003). The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met. *Id.*  Moreover, a district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are determinative of the issue.  *Id.*

### Missouri Successorship Law and the *Medicine Shoppe* Decision

Plaintiff's breach of contract claims against Jennifer Sheets and SBI are premised on a theory of successorship. Plaintiff argues that although Jennifer Sheets and SBI were not parties to the franchise agreement, they are nonetheless bound by its terms as successors of Letha Sheets under Paragraph 27 of the agreement.

Missouri law identifies several factors relevant to a determination when an individual or entity is a "successor" for purposes of legal liability. Those factors include:

(1) whether the successor and predecessor are in the same business;

(2) the degree of similarity between the business operations of the predecessor and successor;

(3) whether the same equipment , physical structures, work force, and supervisors

12

used by the predecessor were also used by the alleged successor;

(4) whether the employees were notified of any change in ownership;

(5) whether there are common incorporators, officers, directors, or stockholders between the predecessor and successor;

(6) whether employees retained by the new entity were re-hired under new employment contracts. *E.g., Roper Elec. Co. v. Quality Castings, Inc.,* 60 S.W.3d 708, 711 (Mo. App. 2001); *Brockmann v. O'Neill,* 565 S.W.2d 796, 798-99; *Medicine Shoppe Int'l, Inc. v. S.B.S. Pill Dr.,* 336 F.3d 801 (8th Cir. 2003); *Sherlock v. Quality Control Equip. Co. Inc.,* 79 F.3d 731, 733-34; *Wallace v. Dorsey Trailers Southeast, Inc.,* 849 F.2d 341, 343 (8th Cir. 1988).

In *Medicine Shoppe*, Medicine Shoppe International sued S.B.S. Pill Dr. and Savannah Swartout to enforce the terms of a franchise agreement between Medicine Shoppe and Cape Fear Apothecaries, Inc. Medicine Shoppe, the franchisor, argued that the Pill Dr. pharmacy, though not a signatory to the franchise agreement, was the corporate successor to the franchisee (Cape Fear), and that the successor was bound by the terms of the franchise agreement between Medicine Shoppe and Cape Fear. Medicine Shoppe claimed that Pill Dr. was thus obligated by the contract to identify and operate its pharmacy as a Medicine Shoppe Pharmacy. *Id.* at 801. The district court agreed and entered a preliminary injunction prohibiting defendants from identifying their pharmacy as anything other than a Medicine Shoppe. The Eighth Circuit affirmed the order on appeal. *Id.* at 802. A discussion of the facts of *Medicine Shoppe* will inform the Court's analysis of the case at bar.

In 1976, Savannah Swartout's father entered into a license agreement with Medicine Shoppe authorizing him to operate a Medicine Shoppe Pharmacy for a term of twenty years. *Id.* Shortly thereafter, Mr. Swartout assigned the agreement to Cape Fear Apothecaries, Inc. Cape Fear operated the pharmacy for twenty years and renewed the license for a ten-year term beginning March 20, 1996. Soon after receiving her pharmacy license in 1996, Savannah Swartout became the pharmacist-manager of the pharmacy. *Id.* Swartout became a shareholder of Cape Fear in 1998 and acquired sole ownership of the Swartout Property from her father in 1999. *Id.*

In May 2002, Medicine Shoppe informed Swartout that it believed Cape Fear had under reported its revenues and owed approximately $300,000 in unpaid license fees as a result. Soon thereafter, Swartout incorporated Pill Dr., acquired new permits, purchased new inventory, removed Cape Fear's office equipment and furnishings, and purchased new office equipment and furnishings. *Id.* Pill Dr. and Swartout began operating a pharmacy on the Swartout Property as Hope Mills Drug. At that time, Swartout provided patients a prescription transfer authorization form that stated in part: "Due to unforeseen circumstances, this pharmacy will no longer be run as a 'Medicine Shoppe.' You may expect the same care and treatment from our same staff. Only the name has changed..." *Id.*

After Cape Fear filed bankruptcy, Swartout and Pill Dr. operated the pharmacy under the new name Hope Mills Drug. The pharmacy had the same customer base and the same employees as the Medicine Shoppe Pharmacy. Swartout was the President of Cape Fear and the President of Pill Dr. *Id.*  Swartout was also the pharmacist-manager of the Medicine

Shoppe pharmacy as well as Hope Mills Drug. *Id.* During the evidentiary hearing, a Medicine Shoppe regional manager testified that an operating pharmacy has three primary assets: its inventory, its customer files, and the value in its location due to the long term presence of a pharmacy. *Id.* Pill Dr. acquired Cape Fear's customer lists and files without paying.

The Eighth Circuit, in evaluating the "probability of success on the merits," first noted that because neither Pill Dr. nor Swartout had signed the franchise agreement, the breach of contract claim depended on whether Pill Dr. or Swartout was a successor to Cape Fear under Missouri law. *Id.* The Court noted that the general rule in Missouri is that a successorship exists, making the successor liable for the obligations of the contracting party:

> (1) where the purchaser expressly or impliedly agrees to assume the debts or liabilities of the transferor; (2) where the transaction amounts to a merger or consolidation; (3) where the purchasing corporation is merely a continuation of the selling corporation; or (4) where the transaction is entered into fraudulently for the purpose of escaping liability for the debts and liabilities of the transferor. *Id.*

The Court found Pill Dr. was a successor to Cape Fear because Pill Dr. was in essence, "merely a continuation" of Cape Fear. The Court noted that a substantial amount of Cape Fear's assets and business were transferred to Pill Dr., including patient files, store location, and store furnishings. *Id.* at 804. Pill Dr. began operations in the same location, using the same employees and manager. Pill Dr. also invited Cape Fear's customers to transfer their prescriptions. *Id.* The Court held that the goodwill developed by the pharmacy operating in the same location for more than twenty-five years was likely to be a substantial part of the value of the pharmacy. *Id.*

15

The Court further held that (1) because there was a common identity of the officers, directors, and stockholders between Pill Dr. and Cape Fear; (2) Pill Dr. operated the same type of business in the same location as did Cape Fear; (3) Pill Dr. and Cape Fear operated, *inter alia,* with the same employees and manager; and (4) that the notification of the transfer was given to the customers through a solicitation letter, that all the factors weighed in favor of finding that Pill Dr. was a mere continuation and therefore successor, to Cape Fear. *Id.* at 804-05.

Defendants' attempts to distinguish *Medicine Shoppe* are unavailing.  More particularly, Defendants emphasize facts that were not used by the Court in support of its holding.  For example, the alleged underpayment of license fees and storing away of inventory cited by Defendants had no bearing and were not necessary to the Eighth Circuit's finding that a successorship existed.  Moreover, Defendants highlight the fact that the *Medicine Shoppe* franchise had four years remaining in its term. Defendant then makes the claim that the instant case "involves a franchise agreement that has terminated upon its terms at expiration."  Defendants misstate the facts of this case.  Although the franchise has terminated, the post-termination obligations under the agreement continue by their own terms. *See, e.g.,* ¶¶ 12-14.   In sum, the Court finds the factual distinctions cited by Defendants are unpersuasive.

Additionally, Defendants misrepresent the importance of *Medicine Shoppe*'s holding to the instant case. That is, the holding speaks to successorship liability with regard to the contractual obligations of the predecessor.  While Defendants may be correct in stating that *Medicine Shoppe* "has nothing to do with a covenant against competition," this is true

because the case was cited in support of the theory that SBI is a legal successor to Letha Sheets' Block franchise. It was not offered to suggest that the non-compete agreement is valid. That issue will be discussed below.   Insofar as *Medicine Shoppe* stands for the application of contractual liability to a nonsignatory based upon a theory of successorship, it does apply to the case at bar.

### Successorship as Applied to Sheets Bookkeeping Inc. and Jennifer Sheets

Many, if not nearly all, of the factors that lead the Eighth Circuit in *Medicine Shoppe* to conclude that the non-parties to the franchise agreement could be bound, are present in the instant case. This case presents several facts that strongly suggest a likelihood of Plaintiff's success on the merits of Plaintiff's claims of breach of covenants of non-competition, non-solicitation, and non-disclosure (Counts I and II of the Complaint) against Defendants SBI and Jennifer Sheets.

Defendants have argued that Sheets Bookkeeping, Inc. (and Jennifer Sheets) cannot be bound by the covenants of non-competition, non-solicitation, and non-disclosure as they were not signatories to the franchise agreement. Defendants also state that Sheets Bookkeeping Inc. is not a successor to Letha Sheets' H&R Block franchise. Such statements, however, go unsupported by any law or facts.

It is virtually uncontested that Sheets Bookkeeping is preparing tax returns for former customers of Letha Sheets' Block franchise. These operations take place in the same location as the former Block franchise. One of the phone numbers formerly assigned to the Block franchise is now being used by SBI. ¶¶ 39-41 *supra.* SBI's employees were all employees of the former Block franchise. ¶ 36. SBI occupies the same space, uses the

same furniture computers and telephones, and retains one of the telephone numbers of the former Block franchise. ¶¶ 39-40.

Defendants claim in their pre-hearing brief that "absolutely no assets of the franchise were 'transferred or sold' to SBI," but this is simply unsupported by the facts. SBI retained access to Block's clients, their most valuable asset. *See* ¶ 44. SBI retained a Block phone number, the office location, the office furniture, the telephones, and the goodwill built up by Letha's franchise over the duration of the franchise. *Medicine Shoppe* recognized that the goodwill developed by operating a business in the same location over a number of years is a substantial asset. *See* 336 F.3d at 804.

SBI retained client names and addresses from the client files of Letha Sheets' Block franchise. Those names and addresses were used to generate a solicitation letter that was mass mailed to all of the Block franchise's clients from the year 2005. ¶¶ 31-35, *supra.* Defendant Jennifer Sheets maintained in her testimony that the letter was not a solicitation, but the Court finds otherwise. The letter advised clients to "rest assured that it is our intention to provide, the prompt, accurate, and friendly services you have come to expect." ¶ 32. Despite Defendants' assertions, the statement conveys an explicit offer of services to the customers of the former Block franchise. It is, therefore, a solicitation.

The letter not only serves to enhance a likelihood of a finding that SBI did in fact solicit Block customers, it also would lend support to a finding that SBI is "merely a continuation" of Letha Sheets' Block franchise. *Medicine Shoppe,* 336 F.3d at 803. That is, in addition to the clear evidence that SBI is conducting the same business, in the same place, under the same telephone number, with the same employees, for the same

18

customer, there is an expression of continuation by SBI.  The letter states that "[a]lthough we are no longer affiliated with H&R Block, it is our intention *to continue* to prepare tax returns and to offer bookkeeping services *as in the past*."¶ 32 (emphasis added).

The holding in *Medicine Shoppe* was based in first part on a finding that most of the predecessor's assets had been transferred to the successor. Among those assets, the Court recognized the goodwill generated by the continuous operation of one business in the same location for many years. 336 F.3d at 804. SBI retains not only the physical assets of the former Block franchise (furniture, computers, phones, phone numbers, and employees), but also the highly valuable intangible assets such as customer goodwill. *Medicine Shoppe*, in second part, held that there was "merely a continuation" of the old business based upon common identity of officers and employees, performance of the same services in the same location, and a notice of transfer provided in a solicitation letter. All of these factors are present in the case at bar, as already discussed, and the Court finds that Plaintiff has successfully demonstrated a strong likelihood of success on the merits of Counts I and II of its Complaint as regards to Defendants SBI and Jennifer Sheets (i.e., that SBI solicited Block customers and competed in violation of the franchise agreement).

**Enforceability of the Franchise Agreement**

In its pre-hearing brief, Defendants argue that once Miss Stamper opened a new Block franchise in West Liberty, Block no longer had any right to enforce the terms of the franchise agreement.  In support of their argument, they rely upon *Jiffy Lube v. Weiss Brothers*, 834 F.Supp. 683 (D. N.J. 1993), a case interpreting the provisions of three year covenant not to compete under New Jersey law.  Defendants' reliance on *Jiffy Lube* is

misplaced.  First, the case applied New Jersey law rather than Missouri law.  Second, the terms of the agreement required a three year non-compete agreement, which the Court found excessive, rather than the one year agreement herein.  Third, the geographic provisions of Jiffy Lube's non-compete agreement were much different than those herein, to wit, the franchisee wasn't allowed to compete anywhere within a ten mile radius of any Jiffy Lube location anywhere in the state of New Jersey.  Fourth, the language at page 692 of the opinion[3] is *dicta* and is contrary to the purposes of a reasonable non-compete clause.  If the Court were to agree with Defendants on this point, the non-compete agreement would be meaningless.  Finally, there is no evidence that the Weiss brothers improperly used proprietary customer information in establishing their own competing business, as was the case herein.

Defendants also argue that the non-compete provision in paragraph 12 of the franchise agreement is unreasonable and against public policy due to "lack of mutuality." In essence, Defendants argue that because Block retained the right to have other Block franchises within the same 45 mile radius that Letha Sheets is prohibited from competing for a period of one year, that the agreement should be deemed void as against public policy.  In support of their argument, Defendants rely upon Judge Forester's 1994 decision in *BJM & Associates v. Norrell Services*, 855 F.Supp. 1481 (E.D. Ky 1994).  Defendants' reliance on *BJM & Associates* is equally misplaced.  First, *BJM & Associates* involves the application of Georgia law rather than Missouri law.  Second and more importantly, the

---

[3]  The Court stated "once Jiffy Lube has placed a new franchisee in the Turnersville area, ... Jiffy Lube's legitimate interest in preventing competition from the Weisses, under their own name or mark, essentially disappears, and the covenant becomes an impermissible restraint of trade. 834 F.Supp. at 692.

opportunistic and predatory behavior of the franchisor censured by Judge Forester as being in violation of the franchise agreement in that case is not present here. Defendants had operated the West Liberty Block franchise for many years, knowing full well that other Block franchises were in existence throughout Eastern Kentucky. This is not a case where Block granted another Block franchise after-the-fact to directly compete with the West Liberty franchise. Although there are many other Block franchises throughout Eastern Kentucky, the testimony at the hearing established that each franchise has its own niche in the small community it serves. Moreover, Defendants herein have failed to identify any evidence that the franchise agreement was not properly supported by consideration such that the agreement was void due to an alleged lack of mutuality.

One additional point regarding the enforceability of the franchise agreement deserves brief comment. Defendants argue that because Block has several other franchises within a 45 mile radius of West Liberty, Block's ability to conduct its business has not been hampered by SBI's preparation of tax returns. The Court disagrees. As testified to by Jennifer Sheets, West Liberty is a small town and there have clearly been many 2005 Block clients who have their 2005 returns prepared by SBI. The fact that other Block franchises may exist in adjoining counties does not change the fact that revenues for Miss Stamper's West Liberty franchise are down 65% when compared by Letha Sheets' 2005 Block revenues over the same period last year.

**Jennifer Sheets**

Count IV of Plaintiff's Complaint alleges a state law Tortious Interference claim against Defendant Jennifer Sheets. Because Count IV sounds in tort, it does not fall under the choice of law provision in the Franchise Agreement. Accordingly, Kentucky law will govern claims under Count IV.

Kentucky has adopted the Restatement 2d of Torts, Section 766 for the elements required to establish a claim of tortious interference. *See Carmichael-Lynch-Nolan Advertising Agency, Inc. v. Bennett & Associates, Inc.,* 561 S.W.2d 99, 102 (Ky. App. 1977). That Section provides:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Kentucky law also provides that the party whose interference is alleged to have been improper may escape liability by showing that it acted in good faith to assert a legally protected interest of its own. *See Nat'l Collegiate Athletic Ass'n v. Hornung,* 754 S.W.2d 855, 858 (Ky. 1988).

In this case there can be no doubt that Jennifer Sheets had no legally protected interest in preparing tax returns for former customers of Letha Sheets' H&R Block franchise. Additionally, she had no right to any client files, client lists, or client names and addresses belonging to the former Block franchise. Moreover, she was aware that Letha Sheets' contract with Block required her to obtain agreements from employees of the franchise (including Jennifer Sheets, as well as other Block franchise employees now

22

employed by SBI) containing covenants not to compete. She knew this because she herself had refused to sign such an agreement since 1993. ¶¶ 25, 26.

Jennifer Sheets also admitted during the hearing to using confidential name and address information from the customer files in preparation of the January 6, 2006 letter that was mailed to 2005 Block clients. ¶ 33-35. Defendants' attorney stipulated in open court that Jennifer Sheets had prepared business tax returns on behalf of SBI during 2004-2005 (thus directly competing with the then existing Block franchise) ¶ 30.  Jennifer Sheets was the one responsible for maintaining the electronic client files. These were the only client files made available to Block upon termination of the franchise, and they contained incomplete information.  ¶¶ 28-29.  In essence, Jennifer Sheets knew of her mother's contractual obligations with Block and actively assisted in the breach of those obligations, namely the obligations to execute employee non-compete agreements, to non-disclosure, non-competition, and non-solicitation.

For the reasons discussed above, the Court finds that Plaintiff has established a strong likelihood of success on the merits of its claim against Jennifer Sheets for tortious interference.

**Letha Sheets**

With regard to Defendant Letha Sheets, Plaintiff has established a strong likelihood of success on the merits of its claims under Counts II and VII of the Complaint. Letha Sheets admitted in her testimony that she had not caused any of her employees to execute an employee non-compete agreement as required by the contract since 1993. ¶ 25.  While Defendants attempted to argue at the hearing that Block is estopped from enforcing this

part of the franchise agreement based on its response to an earlier situation with a previous employee, the contract itself provides that failure to enforce any provision at any time does not amount to a waiver of any right to enforce any terms or conditions thereafter ¶ 27. Defendants' estoppel argument thus lacks merit. There is a very strong likelihood of success on the merits of Count VII of the Complaint.

Count II of the Complaint binds Letha Sheets to a covenant of non-disclosure. Evidence adduced at the hearing reveals that Jennifer Sheets and/or SBI had access to confidential client names and addresses that were used in the solicitation letter mailed on behalf of SBI. ¶ 31-35. Additionally, despite Jennifer Sheets' claim that she lacked access to both the paper and electronic client files, the evidence suggests otherwise. Letha Sheets stated at the hearing that she had no knowledge of what the electronic client files contained because she was computer illiterate. She further stated that Jennifer had been in charge of maintaining the electronic records. ¶ 29. Additionally, Letha admitted that the paper copies of the Block files remained in an unlocked file cabinet that remained on the premises of SBI (where Letha maintained a personal office). ¶ 28, 37-38. Whether or not Jennifer actually availed herself of access to those file cabinets, the mere fact that SBI was able to mail a solicitation letter to approximately 1,000 former Block clients using information obtained from the confidential client files, clearly demonstrates that certain confidential information had been divulged for SBI and Jennifer Sheets' benefit. Accordingly, the Court finds a strong likelihood of success on the merits of Count II of the complaint against Letha Sheets.

**Plaintiff Will Be Irreparably Injured Absent Preliminary Relief**

As the Plaintiff has demonstrated strong likelihood of success on the merits of several of the claims set forth in its Complaint[4], the Court must evaluate what, if any irreparable harm might occur to Plaintiff's protected interests. The Court in *Medicine Shoppe* found that customer confusion and loss of customer confidence in the Medicine Shoppe name and its franchises constituted irreparable injury. 336 F.3d at 805. The Court also recognized that injury to reputation and loss of goodwill is difficult, if not impossible, to quantify in terms of dollars. *Id.* Injuries to such intangible assets, also present in the case at bar, cannot be ameliorated through the award of money damages.

As the height of the tax season occurs during the months of January through April, time is of the essence concerning the potential for injury to the Plaintiff.  By the time this litigation concludes, Plaintiff will no doubt have lost the benefit of any favorable judgment as pertains to the 2005-2006 tax season. If the current status quo is preserved and Sheets Bookkeeping is permitted to continue to compete with Plaintiff, prepare tax returns for clients belonging to the Plaintiff, and misappropriate confidential information as well as the client trust and goodwill earned by the Plaintiff over the duration of the former Block franchise, those clients and goodwill may be irretrievably lost. Accordingly, the Court is satisfied that the Plaintiff will suffer irreparable harm absent a preliminary injunction.

---

[4]  Although not necessary for purposes of adjudicating Plaintiff's motion for preliminary injunction, the Court also believes Jennifer Sheets' use of Block's confidential 2005 client list to prepare the January 6, 2006 solicitation letter is strong evidence of a violation of Count III of the verified complaint.

**Balance of harms**

In balancing the harms that might occur to Defendants upon the issuance of a preliminary injunction against the harms already enumerated for the Plaintiff, the Court places emphasis on Jennifer Sheets' testimony that in the year 2005, it would have been economically feasible for Sheets Bookkeeping to exist independent of and without the H&R Block franchise of Letha Sheets. ¶ 45.  As Sheets Bookkeeping Inc. was not in the business of preparing tax returns during the year 2005,[5] this statement is tantamount to an admission that Sheets Bookkeeping Inc. can successfully continue to exist and operate without preparing any tax returns in competition with H&R Block.  Sheets Bookkeeping has never had any legally protected interest in preparing tax returns for customers of the former Block franchise, and accordingly no such interest will be harmed by a preliminary injunction barring such activity.

On the other hand, H&R Block is threatened with permanent damage to its customer base, customer trust, and goodwill, all of which were cultivated throughout the duration of the Block franchise with Letha Sheets. As discussed above, Block stands to suffer injuries that cannot be made whole with money damages. The balance of harms clearly weighs in favor of the issuance of a preliminary injunction.

**An Injunction Will Serve the Public Interest**

The public interest calls for the enforcement of a valid non-compete agreement. Additionally, to the extent that a preliminary injunction may help reduce confusion among

---

[5]  That is, other than the 16 or so business tax returns that were prepared by Jennifer Sheets for SBI, in clear violation of the franchise agreement. ¶ 30.

26

customers seeking tax preparation services, the public interest is likewise served.

## IV.    CONCLUSION

Balancing the four factors set forth in *Plymouth Whalers Hockey Club*, the Court concludes that of the four factors favor the issuance of a preliminary injunction in this case. Accordingly, **IT IS HEREBY ORDERED THAT:**

(1)    Plaintiff's Motion for a Preliminary Injunction (Docket No. 2) is **GRANTED**;

(2)    Upon the posting of the bond set forth herein, and during the pendency of this litigation up to and through December 18, 2006, Defendants, Letha Nell Sheets, Jennifer M. Sheets, and Sheets Bookkeeping, Inc., their agents, employees and persons acting in concert with them, are enjoined from the following activity, directly and indirectly –

(A)    Competing, directly or indirectly, with H&R Block Services, Inc. or its franchisee in the business of preparing tax returns or performing related services in or within 45 miles of West Liberty, Kentucky;

(B)    Participating in any business, in any capacity, either directly or indirectly, or by acting individually, to file, prepare, or assist in preparing tax returns or performing related services within 45 miles of West Liberty, Kentucky;

(C)    Soliciting, directly or indirectly, by mail, phone, in person, or by way of any advertisement, or diverting from H&R Block Services, Inc. or its franchisees any person for whom Letha Sheets, or anyone else who prepared a tax return or performed related or additional services as

27

defined in the franchise agreement dated December 18, 1990 between Letha Sheets and H&R Block;

(D)     Using or divulging any information or knowledge concerning, but not limited to, confidential customer and proprietary information belonging to H&R Block;

(3) Defendants shall immediately transfer possession to H&R Block all customer information and customer tax returns and all materials, data and property of H&R Block including all computer software provided by H&R Block to Letha Sheets, all sets and copies of the Manual and all books, records, customer lists, forms, files and computer storage materials;

(4) H&R Block shall deposit with the Clerk of the Court a bond in the amount of five thousand ($5,000.00) dollars; and

(5) Defendants' Motion For Enlargement of Time Within Which to Answer (Doc. # 26), is **GRANTED**.  Defendants shall file their Answer not later than March 20, 2006.

This 3rd day of March, 2006.



Signed By:

_David L. Bunning_   DB

**United States District Judge**

G:\DATA\ORDERS\AshCivil\06-23 MOO